IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RP WYNSTONE, LP, ET AL.,

             Plaintiffs,

v.

NEW HANOVER TOWNSHIP, ET AL.,

             Defendant.

CIVIL ACTION
NO. 24-959

## OPINION

**Slomsky, J.**                                            **December 23, 2024**

**I.   INTRODUCTION** ........................................................................................................... 3

**II.  PARTIES** ...................................................................................................................... 3

**III. FACTUAL BACKGROUND** ....................................................................................... 5

  A.   Allegations Made by All Plaintiffs in This Case ............................................................ 5

  B.   Allegations in State Court Are Asserted as Background Information in This Case ........ 6

    1.   RP Wynstone's Initial New Development Plans Are Preliminarily
        Approved and the Parties Agree on Ordinances That Would Apply ........................... 6

    2.   RP Wynstone's Alleged Compliance With Township Ordinances ............................. 6

    3.   RP Wynstone Eventually Contends That the Township
        Was Deliberately Trying to Thwart Its Plans ............................................................. 8

    4.   The Pending State Cases Seek to Void Ordinances
        and to Order the Township to Reconsider Development Plans ................................... 8

    5.   Plaintiffs Provident and RPE Allege They Received
        Similar Treatment From Township Officials .............................................................. 11

**IV.  PROCEDURAL HISTORY** ............................................................................................. 12

**V.    THE MOTION TO STAY THIS CASE** ........................................................ 13

**VI.    RELEVANT LAW** ............................................................................... 14

    A.    Factors Pertinent to Whether a Stay Is Appropriate ................................ 14

    B.    The <u>Younger</u> Abstention Doctrine ...................................................... 15

**VII.    ANALYSIS** ...................................................................................... 17

    A.    Factors Pertinent to Whether a Stay Is Appropriate
        Weigh Against Abstention in This Case .................................................. 17

        1.    While Many Facts in the Prior State Cases Overlap With This Case,
            They Merely Provide Background Information,
            Not Total Identity of Parties and Issues .......................................... 17

        2.    The Court Need Not Stay the Case in the Interest of Comity .................... 19

        3.    The Court Need Not Stay the Case in the Interest of Judicial Efficiency
            Because the State Cases Are Not Parallel to This Case ........................... 20

        4.    The Court Need Not Stay the Case to Avoid
            Alleged Prejudice to the Party Opposing the Stay ................................ 21

    B.    The <u>Younger</u> Abstention Doctrine Does Not Apply Here ............................ 22

        1.    This Case Will Not Interfere With the State Cases,
            Which Is a Threshold Issue for the Court to Consider
            in Determining Whether <u>Younger</u> Abstention Applies Here .................... 22

        2.    Although the Ongoing State Cases Implicate State Interests,
            a Stay Is Not Warranted Because the State Cases Do Not
            Address the Alleged Constitutional Violations ................................... 23

        3. This Case Involves Allegations of Constitutional and Civil Rights
            Violations Not Claimed in Any of the State Cases ............................... 24

**VII.    CONCLUSION** ............................................................................... 24

## I.    INTRODUCTION

Although the facts of this case seem complicated, the story, for purposes of the Motion to Stay Proceedings that is before the Court, is simple.[1]  Plaintiffs had plans to develop approximately 203 acres of land in New Hanover Township in Montgomery County, Pennsylvania.  One Plaintiff received Preliminary Approval of its development plan from the Township.  Other Plaintiffs believed their plans would also be approved.  They all proceeded to implement them.  Then, things got complicated by certain actions of Defendants, some with approval authority, leading some Plaintiffs to file ten (10) cases in state court.  In those cases, Plaintiffs question either the validity of the applicable state ordinances or the application of those ordinances to their development plans. Not satisfied with just filing those lawsuits, Plaintiffs in the state cases teamed with others in filing this case in federal court.  They allege that Defendants engaged in a civil conspiracy to violate their rights under provisions of the United States Constitution because, among other things, Defendants wish to keep out minority residents from New Hanover Township.  Now, Defendants want this Court to stay this case until the pending state cases are completed.  For the following reasons, Defendants' Motion to Stay (Doc. No. 33) will be denied.

## II.    PARTIES

Plaintiffs are landowners of various parcels of property in New Hanover Township.  They consist of entities and individuals, totaling nine (9) plaintiffs.  They are grouped together as follows:

- RP Wynstone, LP ("RP Wynstone") and the following related entities:

    o   AT Realty, LP ("AT Realty")

    o   AKM Properties, LP ("AKM Properties")

---

[1]    The Motion was filed by the "Township Defendants," named below.

- o  Trollyline Enterprises, LP ("Trollyline")

- o  General Hancock Partnership Enterprises, LP ("General Hancock")

- Real Pro Enterprises, LP ("RPE")

- Provident Trust Group, LLC for the benefit of the following related individuals:

  - o  Benjamin Goldthorp Roth IRA

  - o  Clayton Heckler IRA

There are seventeen (17) Defendants in this case, which can be divided into three (3) groups.  The first group, (collectively "Township Defendants"), are as follows:

- The Board of Supervisors of New Hanover Township (the "Board")

- the following Township officials (the "Individual Defendants"):

  - o  William Ross Snook ("Supervisor Snook")

  - o  Kurt Zebrowski ("Supervisor Zebrowski")

  - o  Marie Livelsberger ("Supervisor Livelsberger")

  - o  Boone Flint ("Supervisor Flint")

  - o  Charles Garner ("Supervisor Garner")

  - o  Jamie Gwynn ("Manager Gwynn")

- as well as the following other Township officials:

  - o  Thomas Miskiewicz ("Authority Chair Miskiewicz")

  - o  William Moyer ("Planning Member Moyer")

  - o  Susan Smith ("Planning Vice Chair Smith")

  - o  Russel Oister ("Planning Chair Oister")

- New Hanover Township (the "Township")

- New Hanover Township Authority  ("Sewer Authority")

4

The second group of Defendants ("Cedarville Defendants") are as follows:

- Cedarville Engineering Group, LLC ("Cedarville") and its related individual:

    o   Robert Flinchbaugh ("Flinchbaugh")

The third group of Defendants ("Knight Defendants") are as follows:

- Knight Engineering Inc. ("Knight") and its related individual

    o   Daniel Gray ("Gray")

(See Compl. at ¶¶ 12–36.)

### III.    FACTUAL BACKGROUND

#### A.    Allegations Made by All Plaintiffs in This Case

Plaintiffs assert Defendants engaged in a civil conspiracy to violate Plaintiffs' federal civil rights, in violation of 42 U.S.C. § 1983.  As alleged in the Complaint, Defendants thwarted their development plans by reviewing their applications in bad faith as well as enacting ordinances and manipulating the applicability of those ordinances to place obstacles in Plaintiffs' path, in violation of Plaintiffs' property rights.  (See Doc. No. 50 ["Amended Complaint" or "Compl."] at ¶¶ 3, 4, 352–56).  Plaintiffs further claim the alleged misconduct was extreme and outrageous and guided by racial animus—insofar as Defendants wanted to prevent any increase in the population of racial minorities in a town that is 95% white—in violation of the Equal Protection and Substantive Due Process Clauses of the Fourteenth Amendment to the United States Constitution.  (See id. at ¶¶ 5, 319–350.)  For these violations, Defendants seek monetary and injunctive relief.  (See id.)

**B.** **Allegations in State Court Are Asserted as Background Information in This Case**

**1.** **RP Wynstone's Initial New Development Plans Are Preliminarily Approved and the Parties Agree on Ordinances That Would Apply**

On July 13, 2005, Plaintiff RP Wynstone submitted plans to Defendant New Hanover Township to develop a mixed-use "Town Center" on approximately 203 acres, including residential dwelling units of various types.  (Compl. at ¶ 95; Doc. No. 48-1 at 3, 4, Case No. 2020-283, Notice of Appeal at ¶¶ 3–5.)  On October 22, 2007, preliminary approval of the plans was granted (the "Preliminary Approval").  (Compl. at ¶ 96; Doc. No. 48-2 at 6, Case No. 2020-5348 Compl. at ¶¶ 9, 11.)  During the twelve (12) years that followed, RP Wynstone submitted to the Township eight (8) revisions to the development plans.  (See Compl. at ¶¶ 117, 150; Doc. No. 48-2 at 3, Case No. 2020-5348 Compl. at ¶ 12.)  The parties had agreed the revised plans would be subject to municipal ordinances in effect when the first plans were submitted (the "2005 Ordinances") as well as Ordinances 06-02, 06-05, and 07-08 (the "Additional Ordinances").  (See Compl. at ¶ 149; Doc. No. 48-2 at 2–3, Case No. 2020-5348 Compl. at ¶ 9, citing Section 2 of Resolution no. 58-07).[2]

**2.** **RP Wynstone's Alleged Compliance With Township Ordinances**

On October 9, 2019, a manager for Defendant Township issued a letter asserting that RP Wynstone's clearing of land in preparation for development was in violation of the current Soil Erosion, Sedimentation, and Grading Control Ordinance (the "E&S Ordinance") and the Storm Water Management Ordinance (the "SWM Ordinance").  (Compl. at ¶ 198; Doc. No. 48-1 at 3, Case No. 2020-283, Notice of Appeal at ¶ 15.)  The letter directed RP Wynstone to come into

---

[2]    Resolution no. 58-07 was later corrected from 06-05 to 05-06 so the "Additional Ordinances" are 05-06, 06-02, and 07-08.  (Doc. No. 48-2 at 6; Case No. 2020-5348 Compl. at ¶ 10.)

compliance or face enforcement action by the Township. (Compl. at ¶ 199; Doc. No. 48-1, Case No. 2020-283, Notice of Appeal at ¶ 15.) Moreover, on the eighth revised plan, the Township claimed "for the first time that the Additional Ordinances [did] not apply [requiring] significant alteration of the revised plans, which comprise 187 plan sheets of detailed engineering design and specifications." (Compl. at ¶ 151; Doc. No. 48-2 at 6; Case No. 2020-5348 Compl. at ¶ 20.)

To avoid losing the protections afforded by the Preliminary Approval, RP Wynstone asked for a one-year extension of the Preliminary Approval's April 20, 2020 expiration date. (Compl. at ¶ 152; see Doc. No. 48-2 at 5, Case No. 2020-5348 Compl. at ¶ 29.) Although the Township's Board of Supervisors voted on November 7, 2019 to grant the extension, the Township then declared the extension void. (Doc. No. 48-2 at 6, Case No. 2020-5348 Compl. at ¶ 32.) RP Wynstone alleges this change could only have happened because (1) the granting of the extension was designed to allow the Preliminary Approval to expire or (2) the Township acted without authority. (Doc. No. 48-2 at 6–7, Case No. 2020-5348 Compl. at ¶ 33.) The inconsistent positions taken by the Township created two potential expiration dates: April 22, 2020 and an open-ended extension for review of the revised plans. (Doc. No. 48-2 at 7, Case No. 2020-5348 Compl. at ¶ 35.)

Another main point of contention among the parties involved changes to the Sump Pump Ordinance. Plaintiffs claim the ordinance essentially prohibits basements in new developments. (Compl. at ¶ 140; Doc. No. 48-9 at 8–9, Compl. at ¶¶ 32–37.) The ordinance dictated how much water per day per sump pump (a device that removes water from the basement of a building to prevent flooding and water damage) a developer would need to accommodate for when designing stormwater management facilities to prepare for development. (Doc. No. 48-9 at 8, Compl. at ¶ 32.) The required amount of water was changed, purportedly as a correction of a typographical

error, from 4,000 gallons of water to 4,000 cubic square feet of water, which equals 29,922 gallons of water.  (Compl. at ¶ 130; Doc. No. 48-9; Case No. 2022-01135, Compl. at ¶¶ 32–37).  After acknowledging the mistake, the Township adopted Ordinance No. 22-01 (the Amended Sump Pump Ordinance), but then decided to increase the amount of water that must be accommodated per sump pump even more.  (Doc. No. 48-9; Case No. 2022-01135, Compl. at ¶¶ 38–41).  Absent the Sump Pump Ordinance, Plaintiffs would have proposed building residential units with basements that utilize certain sump pumps.  (Case No. 2022-01135, Compl. at ¶ 44.)  Plaintiffs allege that "the sump pump flow calculation is unreasonable, arbitrary, capricious, unnecessary, unduly restrictive, confiscatory, not a valid exercise of the Township's police power, and bears no relation to the public health, safety, morals and general welfare."  (Id. at ¶ 47.)

### 3.    RP Wynstone Eventually Contends That the Township Was Deliberately Trying to Thwart Its Plans

RP Wynstone avers that through the Township's conduct, it "has obstructed, delayed, and refused to diligently and fairly process the plan revisions" based on the terms of the Preliminary Approval.  (Id. at ¶ 56.)  RP Wynstone claims the Township breached their duty of good faith by "refusing to provide guidance regarding the ordinances which govern the latest revised plan submission . . . [and] providing inconsistent, conflicting, and erroneous interpretations regarding the status and legal implications of the Preliminary Approval."  (Id. at ¶ 59.)

### 4.    The Pending State Cases Seek to Void Ordinances and to Order the Township to Reconsider Development Plans

Based upon Defendants' alleged conduct in thwarting Plaintiffs' development plans, some Plaintiffs filed ten (10) suits in Pennsylvania state court.  These cases were filed before this case was filed in this court.  Plaintiffs seek the following relief from state courts:

(1) to order Defendant Township to allow Plaintiff RP Wynstone to install required stormwater management facilities in accordance with an appropriate permit without interference

or obstruction by the Township (<u>see</u> Doc. No. 48-1 at 10; Case No. 2020-283, Notice of Appeal at ¶ 28);

(2) to order the Defendant Township to review Plaintiff RP Wynstone's revised plans pursuant to the terms originally agreed to by the parties, declare that the Preliminary Approval remains in full force, and appoint a neutral master to consider, oversee, and decide on the pending plans  (<u>see</u> Doc. No. 48-2 at 16; Case No. 2020-5348, Compl. at ¶ 63);

(3) to reverse the Board's rejection of Plaintiff RP Wynstone's revised plan sheets and order Defendant Township to accept and process the plan sheets (<u>see</u> Doc. No. 48-3 at 7; Case No. 2021-3311, Notice of Appeal);

(4) to declare that Ordinance No. 21-03 is void[3]  (<u>see</u> Doc. No. 48-4 at 11; <u>In re Appeal of RP Wynstone, LP From the Enactment of New Hanover Township Ordinance No. 21-03,</u> Case No. 2021-5996);

(5) to order Defendant Township "to accept and review the 4 revised plan sheets submitted … as a further revision of the subdivision and land development application submitted . . . award money damages and counsel fees for the bad faith, dilatory, vexatious, and obdurate actions of the Township . . . [and to] appoint a neutral master to consider, oversee, and decide on the pending subdivision and land development application and [Plaintiff RP Wynstone's] plans." (Doc. No. 48-5 at 9–10; Case No. 2021-7294, Compl. at ¶ 34.)

(6) Plaintiff Real Pro Enterprises LP ("RPE") asks the court to declare the following:[4]

---

[3]    Ordinance No. 21-03 omits particular residential uses ("B2 Atrium House" and "B2 Townhouse") permitted in a district where RP Wynstone's property is located and also omits particular residential uses ("B2 Twins" and "B2 Atrium House") as uses permitted in another district where RP Wynstone owns property.  (<u>See</u> Doc. No. 49-1 at 155, Ex. 7.)

[4]    Real Pro Enterprises LP has also gone by the name Forest Manor Apartments, Inc. (<u>See generally</u>, Doc. No. 48-6 at 9; Case No. 2021-9306, Compl.)

>Defendants [New Hanover Township and the Sewer Authority] are not permitted
>to charge sewer rental charges for any Reserved Equivalent Dwelling Units
>("EDUs") that are not connected to the Facility"; "Defendants may not charge more
>than $25 per year for each of the Reserved EDUs that are not connected to the
>Facility until said EDUs are physically connected"; "Defendants' charges for the
>Reserved EDUs to FMI, Windlestrae and ARED were improper and illegal;
>Defendants owe RPE a refund for the improperly collected sewer rental charges
>since 2017 in the amount of $189,500.

(Doc. No. 48-6 at 9; Case No. 2021-9306, Compl. at ¶ 43.)

RPE also seeks the following monetary relief pursuant to 72 P.S. §5566b:[5] "the return of $189,500 plus statutory interest which represents the amounts improperly collected by Defendants for sewer rental charges for the Reserved EDUs that were not connected to the Facility. (Doc. No. 48-6 at 10–11; Case No. 2021-9306, Compl. at ¶¶ 46, 47.) Finally, RPE seeks $189,500 plus statutory interest for their breach of contract claim. (Id. at ¶ 53.)

(7) Appellant RPE and Select Properties, Inc., seek an order from the Supreme Court of Pennsylvania sustaining their appeal of Appellee Township's Board of Supervisors' denial of its development plan, reversing the Board's denial, and remanding the application to the Board to be stayed pending resolution of a procedural challenge. (Doc. No. 48-7 at 11–12; Case No. 2021-16890, Notice of Appeal at ¶ 50.)

(8) Appellant RP Wynstone seeks a reversal of Appellee Board's denial of its land development plans, an appointment of a referee to receive additional evidence relating to the

---

[5]   72 P.S. §5566b provides in relevant part:

>(a) Whenever any person or corporation of this Commonwealth has paid . . . into
>the treasury of any political subdivision, directly or indirectly, voluntarily or under
>protest, any taxes of any sort, license fees, penalties, fines or any other moneys to
>which the political subdivision is not legally entitled, then . . . the proper authorities
>of the political subdivision, upon the filing with them of a written and verified claim
>for the refund of the payment, are hereby directed to . . . refund of such taxes, license
>fees, penalties, fines or other moneys . . .

conduct of the Township and for further review, and consideration of the revised plans under the 2005 Ordinances as amended by the Additional Ordinances.  (Doc. 48-8 at 41; Case No. 2021-24529, Notice of Appeal at ¶ 187.)

(9) Plaintiffs RP Wynstone and RPE seek a declaration that the Stormwater Management Ordinance 23-410.23.A.2.a enacted by Defendant Township is invalid, arbitrary, and unenforceable.  (Doc. No. 48-9 at 17; Case No. 2022-01135, Compl. at ¶ 52.)

(10) Plaintiff  RP Wynstone asks the Montgomery County Court of Common Pleas to declare that Plaintiff has sole ownership in the sewer capacity Equivalent Dwelling Units for the Sewer Properties and to grant such other and further relief as may be proper including an award of counsel fees for the bad faith actions of Defendant Township.  (Doc. No. 48-10 at 17; Case No. 2023-6048, Compl. ¶ at 63.)

### 5.    Plaintiffs Provident and RPE Allege They Received Similar Treatment From Township Officials

According to the Complaint, while all of the back and forth was happening with RP Wynstone, Plaintiff Provident's development plans were also thwarted by Defendants' "bait-and-switch" tactics concerning which ordinances would apply to their development plans.  This mainly concerned the applicability of the Sump Pump Ordinance:

> On or about June 5, 2020, Provident entered into an agreement with a residential homebuilder to subdivide and develop the parcel of the property at issue that is owned by Provident with single-family residential dwelling units that included basements. Because of the excessive requirements of the Sump Pump Ordinance, the residential homebuilder determined that it was not economically feasible to develop the property at the price per lot and terminated the agreement on January 19, 2021. If not for the excessive and unreasonable Sump Pump Ordinance, Provident would be able to develop the Provident Property with basements.

(Compl. at ¶¶ 300–02.)

11

Similarly, Plaintiff RPE complains the Township "hindered and obstructed" their development efforts by failing to give their application thorough proper review, among other "inequitable treatment," which is alleged in the Complaint as follows:

- first, improperly refusing to extend a routine extension on the final approval of a development plan granted in 2015 based on the plan's noncompliance with an ordinance that was not enacted at the time and would not apply even if it had been enacted;

- then, enacting the excessive Sump Pump Ordinance, without notice or review, effectively prohibiting basements, which the proposed townhouses on the RPE Property included;

- then, after RPE filed a complaint asserting a statutory challenge to the Sump Pump Ordinance, with the newly placed roadblock to development at risk of invalidation, the Township adopted yet another roadblock, namely Ordinance 21-01, deleting a permitted use in the R-15 residential zoning district, where the RPE Property sat at the time;

- then, after RPE filed a notice of appeal challenging the validity of Ordinance 21-01 and submitted a new application assuming Ordinance 21-01 would be invalidated, the Township attempted to cure the procedural defect of Ordinance 21-01 by enacting Ordinance 21-04, which purports to accomplish the same thing as Ordinance 21-01;

- then, in order to make the development subject to the newly enacted, again procedurally defective, Ordinance 21-04, despite pending actions challenging the Sump Pump Ordinance and Ordinance 21-01, the Township ignored RPE's written time extension waiver and denied RPE's new application based on RPE's noncompliance with Ordinance 21-01.

(Compl. at ¶ 254.)

## IV.    PROCEDURAL HISTORY

On March 5, 2024, Plaintiffs filed a Complaint in this Court, alleging (1) a violation of the Substantive Due Process Clause to the Fourteenth Amendment under 42 U.S.C. § 1983, (2) a violation of the Equal Protection Clause to the Fourteenth Amendment under 42 U.S.C. § 1983, and (3) Civil Conspiracy.[6]  (Doc. No. 1.)  On May 1, 2024, Township Defendants filed a Motion

---

[6]    The same statements appear in the Amended Complaint (Doc. No. 50) under the same paragraph numbers, and this is true throughout this Opinion.  Leave to file the Amended Complaint was given only as a means for Plaintiffs to define Parties for the Court more clearly.

to Dismiss the Complaint.  (Doc. No. 30.)  On May 7, 2024, both Cedarville Defendants and Knight

Defendants filed Motions to Dismiss the Complaint.  (Doc. Nos. 34, 35.)  Plaintiffs responded with

an Omnibus Response in Opposition to all three Motions.  (Doc. No. 42.)  At a hearing held on

October 25, 2024, Plaintiffs were granted leave to file an Amended Complaint in order to clarify

the identities of the numerous parties involved in this case.  On November 1, 2024 Plaintiffs filed

the Amended Complaint, which is now the operative Complaint in this case (Doc. No. 50).

## V.    THE MOTION TO STAY THIS CASE

On May 7, 2024, Township Defendants filed a Motion to Stay Proceedings in this case

pending disposition of the ten (10) state cases.  The stay was requested based on the following

factors:  (1) comity with other courts, (2) judicial economy, (3) potential prejudice to the parties,

(4) public policy, and (5) the Younger abstention doctrine. [7]  (See Doc. No. 33-1 at 5–10.)

Plaintiffs filed a Response in Opposition asserting that: (1) the Younger abstention doctrine

does not apply and (2) because the federal case and the state cases are not parallel, no stay is

warranted under any other theory.  (See Doc. No. 39 at 13–20.)  Specifically, Plaintiffs argue the

cases are not parallel because: (1) there are 25 parties in the federal action, only five of whom

overlap with the state court proceedings;[8] (2) the state claims mostly seek declaratory relief as to

the validity and application of land use ordinances while the federal claims are mostly for monetary

relief arising from alleged violations under 42 U.S.C. § 1983 of the Equal Protection and

Substantive Due Process Clauses to the Fourteenth Amendment of the United States Constitution.

---

[7]    Younger v. Harris, 401 U.S. 37 (1971) and the abstention doctrine for which it stands, will be
discussed at length below.  Abstention has been extended to include not just outright dismissals,
but also stays.  "[C]ourts may stay actions for damages based on abstention principles."
Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 721 (1996).

[8]    The five parties that overlap are the following: RP Wynstone, RPE, Provident Trust Group,
LLC, the Township, and the Sewer Authority.

(See Doc. No. 39 at 17–19.)  On October 25, 2024, a hearing was held on the Motion to Stay Proceedings (Doc. No. 33), which is now ripe for disposition.

## VI.    RELEVANT LAW

### A.    Factors Pertinent to Whether a Stay Is Appropriate

Defendants rely on two theories in support of their request that this case be stayed.  First, they argue that a court has the inherent discretion to stay a case.  A federal court's power to stay a case pending the outcome of related proceedings is discretionary, and it is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936).

One concern is that a federal case should not interfere with a state case.  For there to be federal interference, plaintiffs must "seek relief in federal courts which will impair the ability of the state courts to adjudicate anything that is currently before them or where federal relief would render the state court's orders or judgments nugatory."  Rappaport v. Norlar, Inc., No. 93–4756, 1994 WL 167959, at *9 (E.D. Pa. Apr. 29, 1994) (internal citations omitted).  Courts in this district have "reviewed factors which should be considered before invoking a federal district court's inherent power to stay proceedings in a case which is also the subject of litigation in a state court." Chintala v. Diamond Reo Trucks, Inc., 393 F. Supp. 1392, 1393 (E.D. Pa. 1975).  The factors are the following:

1. identity of the parties and of the issues in both actions,
2. considerations of comity,
3. promotion of judicial efficiency,
4. adequacy and extent of relief available in the alternative forum,
5. likelihood of prompt disposition in the alternative forum,
6. convenience of the parties, counsel, and witnesses, and
7. possible prejudice to a party as a result of the stay.

14

Id. (citing Nigro v. Blumberg, 373 F. Supp. 1206, 1213 (E.D.Pa.1974)).

   **B.    The Younger Abstention Doctrine**

   Second, federal courts must generally exercise their jurisdiction.  See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996).  But there are limited exceptions, which include the abstention doctrine outlined in Younger v. Harris, in which the United States Supreme Court stressed the importance of "permit[ting] state courts to try state cases free from interference by federal courts."[9]  401 U.S. 37, 43 (1971).

   In applying the Younger abstention doctrine, federal courts should dismiss complaints that involve (1) an ongoing state judicial proceeding, (2) which implicates important state interests, and (3) offers an adequate opportunity in the state proceedings to raise the same constitutional challenges presented in the federal action.  Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (citing Younger, 401 U.S. at 53-54) [hereinafter the "Middlesex test"].  Younger principles also apply to declaratory relief.  Samuels v. Mackell, 401 U.S. 66, 72 (1971).  And while most circuits have held that Younger can apply to monetary relief, the Third Circuit has held that abstention is appropriate only when a ruling on damages would necessarily

---

[9]    John Harris, Jr., the defendant in Younger, was indicted for violating a California statute because he distributed leaflets condemning the killing of Leonard Deadwiler, a black man shot by police while driving his pregnant wife to the hospital.  Transcript of Oral Argument at 15, Younger v. Harris, 401 U.S. 37 (1971).  While his prosecution was ongoing, Harris sued Evelle J. Younger, California's district attorney, to enjoin the enforcement of the statute on grounds that it violated his right to free speech under the United States Constitution.  A California federal court ruled in his favor.  Harris v. Younger, 281 F. Supp. 507, 508, 517 (C.D. Cal. 1968), rev'd, 401 U.S. 37, 91 (1971).  This ruling was eventually reversed by the United States Supreme Court.  See Younger, 401 U.S. at 55.  The Supreme Court held that because a decision of the federal court in the civil case would interfere with the criminal prosecution of Harris, abstention was appropriate there.  See id. at 54.

call into question the validity of a state conviction.[10]  Williams v. Hepting, 844 F.2d 138, 144 (3d

Cir. 1988).

Although Younger concerned the need for a federal court to abstain where hearing a case

would interfere with a criminal proceeding, the Supreme Court "has extended the doctrine to

particular state civil proceedings . . . that implicate a State's interest in enforcing the orders and

judgments of its courts." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 69–70 (internal citations

omitted).  "[F]ederal courts must refrain from interfering with three types of state proceedings:  (1)

'state criminal prosecutions,' (2) 'civil enforcement proceedings,' and (3) 'civil proceedings

involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their

judicial functions."  Altice USA, Inc. v. New Jersey Bd. of Pub. Utilities, 26 F.4th 571, 576 (3d

Cir. 2022) (quoting Sprint, 571 U.S. at 78).  In other words, Younger abstention applies where a

federal court is asked to consider relief that would interfere with state court proceedings.

Whether the federal case would interfere with state court proceedings is discussed by many

circuit courts as the threshold question when Younger abstention is sought.    See e.g.,

Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 40 (1st Cir. 2012).  The doctrine also

applies when requested relief would indirectly interfere with state proceedings.  See e.g., Bice v.

Louisiana Pub. Def. Bd., 677 F.3d 712, 717 (5th Cir. 2012).  While the Third Circuit has not

expressly referred to interference as a threshold question, it has held that a district court erred when

applying the Middlesex test "without actually considering whether the federal action would

---

[10]  See e.g., Rossi v. Gemma, 489 F.3d 26, 37 (1st Cir. 2007) (Section 1983 damage award based
on successful due process argument would have same practical effect on state proceeding as
declaratory judgment based on same constitutional claim); D.L. v. Unified Sch. Dist., 392 F.3d
1223, 1228 (10th Cir. 2004) (Younger doctrine extends to federal claims for monetary relief
when judgment for plaintiff would have preclusive effects on pending state-court proceeding).

interfere with the ongoing state proceedings." Gwynedd Properties, Inc. v. Lower Gwynedd Twp., 970 F.2d 1195, 1203 (3d Cir. 1992), abrogated on other grounds by PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev., 978 F.3d 871 (3d Cir. 2020).  Thus, whether the federal case would interfere with the state case(s) is a threshold question in this case, where a stay is being sought under Younger abstention principles.

## VII.  ANALYSIS

As noted above, the stay was requested pursuant to the interests of:  (1) comity with other courts, (2) judicial economy, (3) potential prejudice to the parties, (4) public policy, and (5) the Younger abstention doctrine, which prioritizes the need for state courts to try state cases free from interference by federal courts.

### A.  Factors Pertinent to Whether a Stay Is Appropriate Weigh Against Abstention in This Case

A review of the factors most relevant to whether a stay pending the outcome of related state proceedings is appropriate reveals that such a stay is not warranted here.  Of the factors outlined in Chintala, Defendants point to considerations of comity, judicial efficiency, and potential prejudice to parties as support for their Motion to Stay.  (See Doc. No. 33-1 at 5–10.)  The other, and perhaps most important, consideration is whether the cases are parallel, which speaks to the identity of parties and issues.  Despite factual overlap, this case is not parallel to prior state cases, and therefore this Court need not abstain in the interest of comity, judicial efficiency, or prejudice.

#### 1.  While Many Facts in the Prior State Cases Overlap With This Case, They Merely Provide Background Information, Not Total Identity of Parties and Issues

While it is true that the facts in the state cases provide necessary background with which to understand and appreciate the claims in the instant case, there are differences between this case and the state cases.  The similar background facts are set forth in the Amended Complaint.  (Doc.

No. 50.)  The overlapping facts, however, do not lead the Court to conclude that the cases are parallel because the Amended Complaint in this case alleges that (1) Defendants' conduct was "extreme and outrageous" and guided by racial animus and (2) Defendants conspired, acting under color of state law, to deprive Plaintiffs of their constitutional right to use their land, causing significant damages for which they seek monetary and injunctive relief.  (See id. at ¶¶ 5, 319–350.)

The Third Circuit has held that factual overlap between the state and federal cases does not necessarily warrant abstention because the plaintiff in the federal proceeding did not seek to "enjoin any state proceedings, nor  . . . challenge the legality of any township or municipal ordinance."  See e.g., Gwynedd, 970 F.2d at 1201.

And as the Third Circuit noted in Yang v. Tsui, "parallel cases involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'"  416 F.3d 199, 205 (3d Cir. 2005) (quoting Timoney v. Upper Merion Twp., 66 F. App'x 403, 405 (3d Cir. 2003)).  Here, the differences among the parties and the issues in this case, and the parties and the issues in the state cases are many.  To start, the parties in the cases filed in both jurisdictions are not entirely the same.

- Plaintiffs in this case are RP Wynstone, RPE and Provident. Plaintiffs in the state cases are as follows:

  - RP Wynstone is a plaintiff in eight (8) state cases;

  - RPE is a plaintiff in three (3) state cases; and

  - Provident is a plaintiff in one (1) state case.

  - But none of the "related entities" for each Plaintiff named in this case, listed above, are not named in any state cases.

- Defendants in this case do not totally overlap with Defendants in the state cases. For example:

- o The Township is a defendant in eight (8) state cases;

- o The Board is a defendant in two (2) state cases;

- o The Sewer Authority is a defendant in two (2) state cases;

- o But none of the individual Board members, Cedarville Defendants or Knight Defendants are named in any state cases.

Thus, in this case, there are only five (5) parties that overlap:  RP Wynstone, RPE, Provident, LLC, the Township, and the Sewer Authority, leaving 21 parties that do not overlap. Further, the state cases are progressing at various stages, some having survived motions to dismiss and motions for peremptory judgment, and some are still in discovery.  (See Doc. No. 48.)

In a motion to dismiss based on abstention principles, including the Younger abstention doctrine, a court in the Middle District denied the motion because there was no identity of parties. "Because the state and federal lawsuits include different parties, as well as identical parties in different procedural postures, the Court finds that the cases are not parallel."  Nat'l Collegiate Athletic Ass'n v. Corbett, 25 F. Supp. 3d 557, 572 (M.D. Pa. 2014).  Here, there is no identity of parties.  Moreover, as noted above, the relief sought and the underlying issues in pursuit of that relief differ from the cases filed in the two jurisdictions.  Therefore, a stay based on abstention principles concerning identity of parties and issues is not warranted.

### 2. The Court Need Not Stay the Case in the Interest of Comity

Defendants assert that "principles of comity support a stay of these proceedings" because "allowing both cases to proceed on parallel tracks could result in conflicting decisions." (Doc. No. 33-1 at 6–7.)  By way of example, Defendants offer that "[a] decision by this Court regarding Plaintiffs' civil rights could easily be at odds with a decision from the state court finding that the Township's decisions were founded on good cause and valid state law."  Id.

19

But as Plaintiffs' note in their reply, because "this proceeding does not involve substantially similar parties or issues," the Court need not abstain on the basis of comity. In this regard, Plaintiffs have a strong argument:

> This action asserts violations of federal constitutional substantive rights based on the conduct of not only the Township and the Township Authority—which are defendants in the state court actions—but also against the Board of Supervisors of the Township, the Individual Township Defendants, the Knight Defendants and the Cedarville Defendants—none of which are parties in the state court actions. The pending state court actions do not involve claims related to Defendants' concerted effort to discriminate against and prevent land development plans that include medium to high density housing.

Thus, the principles of comity do not support a stay here.

### 3. The Court Need Not Stay the Case in the Interest of Judicial Efficiency Because the State Cases Are Not Parallel to This Case

Because certain parties and the issues in this case are not the same as the parties and issues in the state cases, the Court need not stay this case in the interest of judicial efficiency. Defendants allege that because there has already been discovery in the state cases, the time, effort and money spent on new discovery in this case places an undue burden on the parties and the Court. (See Doc. No. 33-1 at 5.) However, for that to be true, essentially the same parties would need to be litigating essentially the same issues, which speaks to "the identity of the parties and of the issues in both actions," another pertinent factor identified in Chintala. Courts have used the term "parallel" to describe this requirement. District courts "act within [their] bounds in staying [] action[s] for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, [are] underway in state court." Wilton v. Seven Falls Co., 515 U.S. 277, 290 (1995). The Third Circuit has held that "[p]arallel cases involve the same parties and

substantially identical claims, raising nearly identical allegations and issues." [11]  Yang, 416 F.3d

199 at 205, n. 5.

Defendants assume, without any support, that the state cases are parallel to the present

federal case.  (See Doc. No. 33-1 at 5, 6.)  The Court agrees with Plaintiffs that the cases are not

parallel because:  (1) not all the parties are the same, with 21 parties in the federal case not being

parties in the state cases; (2) the claims are not the same, as most of the state cases seek declaratory

relief as to the validity and application of land use ordinances while the federal claims are mostly

for monetary relief arising from alleged constitutional and civil rights violations.  Thus, again,

because the parties and the issues in this case are not entirely the same as the parties and issues in

the state cases, with parallelism absent, the Court need not stay this case in the interest of judicial

efficiency.

### 4.  The Court Need Not Stay the Case to Avoid Alleged Prejudice to the Party Opposing the Stay

Defendants aver that because "Plaintiffs filed the state court land use appeals and related

lawsuits prior to the commencement of this action, Plaintiffs cannot claim prejudice from a stay

pending the disposition of those appeals."  (Doc. No. 33 at 2.)  In other words, Defendants allege

that a stay would not prejudice Plaintiffs in the sense that putting the claims in this case on hold

would not time-bar them from the relief in state court because the state court proceedings are

already underway.  (See Doc. No. 33-1 at 7.)  Defendants further allege that if the case is stayed,

"Plaintiffs will avoid the costs associated with discovery that may likely prove to be unnecessary."

---

[11]  Although Wilton and Yang involved another abstention doctrine, based on Colorado River
Water Conservation Dist. v. United States, 424 U.S. 800 (1976), the requirement that the state
and federal cases be parallel has carried into cases weighing whether Younger abstention is
appropriate.  Considering Younger abstention in another case, the Supreme Court noted, "[i]n
Younger [the Supreme Court] recognized an exception to [the obligation for federal courts to
exercise their jurisdiction] for cases in which there is a parallel [state proceeding]."  Sprint,
571 U.S. at 69–70.

(Id.)  However, while it is true that a stay would not prejudice Plaintiffs in terms of time-barring their state claims, when the parties and the issues are different, additional discovery is often necessary to get to the heart of the new claims that affect the new parties in the new case. Therefore, the Court need not stay this case to avoid potential prejudice.

### B.  The <u>Younger</u> Abstention Doctrine Does Not Apply Here

As noted earlier, the <u>Younger</u> abstention doctrine may apply where the federal case would interfere with the state case(s) and where the <u>Middlesex</u> test is met.  The elements of the <u>Middlesex</u> test are that the federal complaint involves (1) an ongoing state judicial proceeding, (2) which implicates important state interests, and (3) offers an adequate opportunity in the state proceedings to raise the same constitutional challenges presented in the federal action.  <u>Middlesex</u>, 457 U.S. at 432 (citing <u>Younger</u>, 401 U.S. at 53–54 (1971)).

#### 1.  This Case Will Not Interfere With the State Cases, Which Is a Threshold Issue for the Court to Consider in Determining Whether <u>Younger</u> Abstention Applies Here

As noted above, "federal courts must refrain from interfering with three types of state proceedings:  (1) 'state criminal prosecutions,' (2) 'civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  <u>Altice</u> 26 F.4th at 576 (quoting <u>Sprint</u>, 571 U.S. at 78).  And interference with ongoing state proceedings is a threshold issue for district courts in deciding whether to stay a case based on the <u>Younger</u> abstention doctrine.  <u>See Gwynedd</u>, 970 F.2d at 1203.

Here, first, there are no state criminal prosecutions.  Second, while some of the state cases seek to enforce certain state ordinances and procedures, the only injunctive relief requested is for the Court to enjoin Defendants from continuing the alleged discriminatory practices.  But the issue of whether Plaintiffs are entitled to this injunctive relief is premature.  Plaintiffs are not seeking any preliminary injunctive relief in this case.  After trial, if liability on the part of Defendants were

found, equitable principles may warrant relief. However, at this point, there is no proven discriminatory practice to enjoin. Therefore, at this time, there is no likelihood of federal interference with the state cases.

Since Plaintiffs here are mostly seeking money damages, they are not currently seeking relief in this Court that "will impair the ability of the state courts to adjudicate anything that is currently before them or where federal relief would render the state court's orders or judgments nugatory." Rappaport, 1994 WL 167959, at *9 (internal citations omitted). The federal case— rather than seeking to impede the pending civil enforcement proceedings concerning the validity and enforcement of land use ordinances and the application review process for developers— involves alleged violations of Plaintiffs' civil and constitutional rights, for which remedies at law are available. Because there is no likelihood of interference at this point, the threshold issue of federal interference is not met, and the Younger abstention doctrine does not apply here.

### 2. Although the Ongoing State Cases Implicate State Interests, a Stay Is Not Warranted Because the State Cases Do Not Address the Alleged Constitutional Violations

Next, the Court will also address the Middlesex factors, one of which covers whether the state proceedings offer an adequate opportunity to raise the same constitutional challenges presented in the federal action. There is no dispute that there are several ongoing state proceedings, which satisfies the first element of the Middlesex test. And issues involving zoning and land use in the state cases are important state interests, which satisfies the second element. See Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 409 (3rd Cir. 2005), abrogated on other grounds by Sprint, 571 U.S. 69 ("[Z]oning and land use issues are of traditional significance to states.") The state proceedings do not, however, involve the same constitutional challenges presented in the federal action. Therefore, the third prong of the Middlesex test, that the "state

proceedings afford an adequate opportunity to raise the constitutional" challenges presented in the federal action, is not met.  Middlesex, 457 U.S. at 424.

### 3. This Case Involves Allegations of Constitutional and Civil Rights Violations Not Claimed in Any of the State Cases

The dispute in this case involves allegations of federal civil rights and constitutional violations against alleged co-conspirators Township, Sewer Authority, Board, Individual Township Defendants, Knight Defendants and Cedarville Defendants, based on a course of conduct over a period of years.  (Doc. No. 39 at 17.)  In the state cases, Plaintiffs ask the courts for declaratory and injunctive relief as to the validity or applicability of state ordinances.  In this case, the allegations involve violations of federal constitutional rights.  None of the state claims allege that any Defendants engaged in a civil conspiracy to violate any of Plaintiffs' federal constitutional rights.

In one state case, there is a claim that comes close to paralleling a federal claim.  In that state case, there is an allegation that the facts "set forth a course of conduct by New Hanover Township, first collaborative, but then, following changes in elected officials and professional consultants, demonstrating bad faith and a denial of due process under the law in an effort to impede and prevent the proposed development."  (Doc. 48-8 at 3; Case No. 2021-24529, Notice of Appeal.)  However, because there is no allegation in the state cases that the conduct was extreme, outrageous, or motivated by racial animus, the case is not parallel to the federal case.

### VIII.   CONCLUSION

For the foregoing reasons, because the Court finds neither parallelism nor interference—threshold issues that must be met in order for a district court to stay a case based on the Younger abstention doctrine—the Motion to Stay Proceedings (Doc. No. 33) will be denied.  An appropriate Order follows.